**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

LOUIS R. GIGLIOTTI, PA,
a Florida corporation,                                              CASE NO.:

      Plaintiff,
v.

AVRA GmbH, a German corporation,
FRIEDRICH EICHELDINGER, an individual
Residing in Germany, ALEXANDRE MALLET,
An individual resident of Florida, and
SERGEI BOGDANOV, an
individual resident of unknown residence,

      Defendants.
_____/

**COMPLAINT FOR BREACH OF CONTRACT, FRAUD, UNJUST ENRICHMENT, AND CONVERSION**

Plaintiff, LOUIS R. GIGLIOTTI, PA, by and through undersigned counsel, sues Defendants, AVRA GmbH, FRIEDRICH EICHELDINGER, ALEXANDRE MALLET, and SERGEI BOGDANOV (collectively "Defendants"), and alleges as follows:

**Jurisdiction and Venue**

1. This is a complaint against Defendants for breach of contract, fraud, unjust enrichment, and conversion.

2. This Court has jurisdiction over the parties and over the subject matter of this action pursuant to 28 USC §1332, and damages exceed $75,000, the statutory minimum.

3. Venue is proper under 28 USC §§ 1391(b)(2), and because Defendant MALLET resides, or may reside in this judicial District.

**The Parties**

1

4.      Plaintiff. LOUIS R. GIGLIOTTI, PA, is a Florida corporation having its principal place of business in Broward County, Florida.

5.      Defendant, AVRA GmbH is a German corporation with an address of Falkensteiner str. 77, 60322, Frankfurt am Main, Frankfurt, Germany.

6.      Defendant, FRIEDRICH EICHELDINGER, upon information and belief, is an individual resident of Frankfurt, Germany, and at all times, was the Director of Defendant AVRA GmbH , and orchestrated and controls the activitites of AVRA GmbH, and at all times, participated in the acts complained of.

7.      Defendant ALEXANDRE MALLET, upon information and belief, is a resident of Palm Beach County, Florida, and also resides at 3 Rue Duras, 75008, Paris, France, and in London, and controlled, and participated in the activities complained of.

8.      Defendant SERGEI BOGDANOV, upon information and belief, operates and controls the activities of Defendant AVRA GmbH, and participated in the acts complained of.

## BACKGROUND FACTS

9.      In October, 2014, the parties exchanged confidential information related to an existing energy transaction, whereby Plaintiff's client, Blue Sky O and G, LLC, a Florida entity, procured a buyer and seller for an energy transaction.  Defendants agreed to provide the financing for the transaction, in the form of a Stand By Letter of Credit ("SBLC").

10.     Defendants, in concert, stated that they would issue the SBLC, in the amount of $4,000,000, provided a blocked funds letter, and promised to issue an SBLC.  (Exhibit A).

11.     Defendant MALLET stated that he had in excess of $9,000,000 in an account with Defendant AVRA, and that he would have AVRA, on his behalf, issue the SBLC to secure the transaction.

12.     Defendants AVRA and EICHELDINGER, stated, in writing, that they would issue the SBLC in accordance with the Purchase and Sale Agreement, and that the SBLC would be issued through Commerzebank, a multi-national bank located in Frankfurt, Germany.

13.     Defendants provided bank account information related to Defendant AVRA's bank account at Commerzebank, and instructed Plaintiff to wire €100,000 to Commerzebank, for the benefit of Defendants.

14.     The €100,000 wire was to secure a performance bond to provide security to Defendants that the transaction would occur.

15.     Plaintiff, Defendants AVRA and EICHELDINGER, executed the Performance Bond Agreement, a copy of which is attached as Exhibit B.

16.     Defendant, AVRA has/had an active bank account at Commerzebank, the details, and account number are provided to Plaintiff, and Plaintiff fulfilled its obligation by causing the funds to be wired to Commerzebank on behalf of Defendants.

17.     On Defendants instructions, and upon reliance on the representations of Defendants, Plaintiff secured the funds under the Performance Bond Agreement, and Plaintiff performed by delivering said funds to Defendants via Commerzebank.

18. Plaintiff was induced to provide the Performance Bond Agreement funds on, amongst other things, the promise by Defendants that they would issue an SBLC in the amount of $4,000,000.

19. Defendant MALLET represented that he had nearly $9,000,000 on account with Defendant AVRA, and merely required the Performance Bond Agreement in order to authorize the issuance of the SBLC.

20. Defendants AVRA and EICHELDINGER represented on multiple occasions, and in writing, that upon receipt of the Performance Bond funds, the SBLC would immediately issue. (Exhibit C).

21. Defendants, in writing, have stated and asserted on multiple occasions that the SBLC has/had issued, and despite its issuance, have refused to produce or deliver the SBLC. (Exhibit C).

22. In the event that the SBLC has never issued, and that Defendants have falsely represented that the SBLC has/had issued, then Defendants shall be liable and obligated to return the Performance Bond funds for breach of the agreement, or by virtue of their being unable to perform.

23. Instead, and despite repeated written demands made by Plaintiff for Defendants to return the Performance Bond funds, the funds have not been returned.

24. Defendants, in concert, have used the funds for their own purpose, and have misappropriated, embezzled, or otherwise breached the trust of Plaintiff, by failing to separate and hold the Performance Bond funds for the stated purpose. (Exhibit E).

25.     Defendants AVRA and EICHELDINGER have admitted that AVRA has fallen on hard times due to the recent market fluctuations in the energy sector, and as a result, do not have the funds to return, which is evidence of admission that they have misappropriated the Performance Bond funds. (Exhibit E).

26.     Defendants have stated, in writing, that they have acknowledged the debt, and have even boldly stated in writing that the SBLC had issued on several occasions and had been delivered in accordance with the Purchase and Sale Agreement.

27.     Despite each and every false statement, Defendants have never issued and delivered the SBLC pursuant to the Performance Bond Agreement, and Commerzebank, despite having received the funds under the Performance Bond Agreement has failed to issue the SBLC.

28.     There were two wire payments made in furtherance of the Performance Bond Agreement. The first was made directly to the account of Defendant AVRA at COMMERZEBANK. The second was made to METRO BANK, in London, to the personal account of Defendant MALLET. The account numbers are not filed hereunder due to privacy concerns, but can be filed under seal.

## ADDITIONAL FRAUDULENT REPRESENTATIONS

29.     Upon information and belief, Defendants have used METRO BANK and COMMERZEBANK to perpetuate a fraud on Plaintiff, and used these banking institutions to commit the wrongful acts complained of, these acts consisting of wire fraud and using the banking system for illegal purposes and gain.

30.     Plaintiff had initially agreed to provide one-half of the Performance Bond funds, or €50,000, and Defendant MALLLET would provide the remaining €50,000.

31.     Defendants represented that H.P Goldfield, who formerly served as U.S. Assistant Secretary of Commerce for Trade Development, provided the €50,000 for MALLET, as Mr. Goldfield has been a life-long friend of Defendant MALLET, and has served as the MALLET family lawyer for decades.

32.     Defendants claimed that they received €50,000 from Mr. Goldfield, but the €50,000 wire was returned or "bounced" because the wire did not identify the purpose of the wire, and the wire was not sent with instructions for how it was to be applied. It was merely sent to AVRA's account. (Exhibit F).

33.     Upon information and belief, the statement in paragraph 31 was made with knowledge of its falsity, and was made for the purpose of inducing Plaintiff to supplement the Performance Bond Agreement by sending or causing to be sent, the additional €50,000. Defendants used Mr. Goldfield to bring credibility to their fraudulent acts.

34.     Defendants relied on the falsely associating with the reputation of Mr. Goldfield to induce Plaintiff to wire, or have wired, the additional €50,000.

35.     Plaintiff sent an email to Mr. Goldfield addressing the assertions made in paragraph 30, but the email was not responded to. It is not known to what extent Mr. Goldfield is aware of the representations made, or whether he ever made any transfer of €50,000 on behalf of Defendant MALLET. (Exhibit F).

36.     Defendant MALLET confirmed in an email that one of the Defendant's who participated in the fraud is Defendant BOGDANOV. (Exhibit G).

37.     Defendants have induced Plaintiff into wiring, or having wired, the Performance Bond funds by falsely promising to issue the SBLC upon receipt of the funds, and that the funds would be immediately returned after the closing of the first purchase and sale transaction.

## COUNT I-BREACH OF CONTRACT

38.     Plaintiff incorporates paragraphs 1-37 as if fully stated herein.

39.     The parties entered into a written Performance Bond Agreement, for the purpose of procuring an SBLC that was necessary to secure a Purchase and Sale Agreement for the sale of energy products in the Caribbean.

40.     The Contract is attached as Exhibit B.

41.     Plaintiff performed its obligations under the Performance Bond Agreement, and the funds were wired to Defendants in two parts, in November 2014.  Proof of wiring is not filed for purposes of maintaining privacy, but can be filed under seal.

42.     Defendants have not issued the SBLC as required under the contract and their failure to do so is a breach of the contract.

43.     In addition, written demand was made to Defendants for the return of the funds that were paid to procure the Performance Bond, and said funds have not been returned, which is tantamount to a breach of the contract. (Exhibit H).

44.     Plaintiff has been damaged by Defendants' breach of the Performance Bond Agreement, in that it has been denied the benefit of the bargain, namely the issuance of the SBLC or the return of the funds paid for the Performance Bond.

45.     Plaintiff's damages are in excess of $1,000,000.

46.     Plaintiff is obligated to pay a reasonable attorneys fee to prosecute this action and is entitled to said fees as part of the damages claimed.

   WHEREFORE, Plaintiff requests relief against Defendants, return of the funds, consequential damages, in an amount to be determined, and that is expected to exceed $1,000,000, and attorneys fees and costs.

## COUNT II-FRAUD IN THE INDUCEMENT

47.     Plaintiff incorporates paragraphs 1-37 as if fully stated herein.

48.     Defendants AVRA, EICHELDINGER, MALLET, and BOGDANOV induced Plaintiff to enter into the Performance Bond Agreement by promising to deliver and procure an SBLC.

49.     Defendants made material false statements by promising to make, deliver, and procure an SBLC.

50.     Defendants knew at the time that the statements were made that they were false, and there was no intention to deliver or procure the SBLC.

51.     The statements were made for the purpose of inducing Plaintiff to act to its detriment.

52.     Plaintiff relied on the false representations, and as a result, has been injured.

53.     Plaintiff is entitled to seek punitive damages for Defendants egregious acts.

WHEREFORE, Plaintiff seeks damages for Defendants' acts of fraud, and punitive damages for Defendants' acts of fraud, and for the damages caused to Plaintiff.

### **COUNT III-UNJUST ENRICHMENT**

54.     Plaintiff incorporates paragraphs 1-37 as if fully stated herein.

55.     Plaintiff conferred a benefit on Defendants by wiring, or having wired, funds to support its obligations under the Performance Bond Agreement that was to result in the issuance of the SBLC.

56.     Defendants had actual knowledge of the benefit, in that the funds were wired directly to their respective accounts at Commerzebank and Metro Bank.

57.     Defendants received the actual benefits of the bargain, and received €100,000.

58.     Defendants would benefit inequitably if not required to return the benefit received, namely, the €100,000.

59.     Plaintiff is entitled to punitive damages.

60.     Plaintiff has accrued legal fees and as such, is entitled to recoup said reasonable fees resulting from Defendants' bad acts.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in the amount €100,000, consequential damages in excess of $1,000,000, punitive damages, and its attorneys fees.

## COUNT IV-CONVERSION

61. Plaintiff incorporates paragraphs 1-37 as if fully stated herein.

62. Plaintiff owns the right to the funds that were held in trust by Defendants, and has every right to possession of those funds.

63. Defendants intentionally interfered with Plaintiff's property by using the funds for their own personal use, despite the funds being earmarked for a trust or escrow purpose, which is tantamount to civil theft.

64. Defendants' misappropriation of the funds and wrongful use of the funds has deprived Plaintiff of the right to access the return of these funds.

65. Plaintiff has suffered damages as a result of Defendants depriving Plaintiff of the funds that were, by agreement, to be held in trust, and by converting those funds for their own use.

WHEREFORE, Plaintiff respectfully demands that its property be returned, that Defendants pay treble damages for their wrongful conversion, and for an Order awarding attorneys fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, LOUIS R. GIGLIOTI, PA, prays that the Court award the following relief:

A. An Order freezing the accounts of Defendants AVRA, EICHELDINGER, MALLET, and BOGDANOV, the account numbers being provided under seal, and Temporarily and permanently enjoining Defendants, their officers, employees, and agents, and all persons and

entities in active concert or participation with any of them from using, disbursing, liquidating, or otherwise alienating funds from these accounts.

 B.      Order that Defendants pay to Plaintiff monetary relief for their breach of contract, in the amount of €100,000, plus lost profits resulting from Plaintiff's breach and failure to provide and deliver the SBLC, other consequential damages to be proven, the costs of this action, including attorney's fees.

C.      Damages for their acts of fraud, including punitive damages, costs, and attorneys fees.

D.      Any other relief as this Court may deem just and proper.

Dated:  March 10, 2015                                              Respectfully submitted,

                                                                             By:/s/ Louis R. Gigliotti/

Louis R. Gigliotti, Esq.
Louis R. Gigliotti, PA
Florida Bar No.: 71935
1605 Dewey Street
Hollywood, FL 33020
Ph/Fax: (954) 922 8214
lgigliotti@bellsouth.net

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that a true and correct copy of the foregoing was filed ECF and served via electronic mail on this 10th day of March, 2015.

                                                       By:     /s/Louis R. Gigliotti
                                                            Louis R. Gigliotti, Esq.

12